STRONG et al. v. BROWARD COUNTY KENNEL CLUB, Inc., et al.

Civil Action No. 1066.

District Court, S. D. Florida, Miami Division.

April 23, 1946.

408

Rosenhouse & Rosenhouse and N. Vernon Hawthorne, all of Miami, Fla., for plaintiffs.

C. H. Landefeld, Jr., of Hollywood, Fla., and C. A. Hiaasen and McCune, Hiaasen & Fleming, all of Fort Lauderdale, Fla., for defendants.

J. B. Patterson, of Fort Lauderdale, Fla., special master.

DE VANE, District Judge.

This is a derivative stockholders' suit under Rule 23(b) of the Rules of Civil Procedure, 28 U.S.C.A. following section 723c, brought by three minority stockholders of the Broward County Kennel Club, Inc., against the corporation and its officers. The complaint alleges payment of excessive salaries, diversion and use of funds improperly and general mismanagement of the corporation by its officers, from its organization to date. Plaintiffs seek a judgment in favor of the corporation against the officers named in the complaint. Plaintiffs also seek the appointment of a Receiver, dissolution of the corporation, the sale of its assets and distribution of the proceeds among the stockholders. The answer of the officers of the corporation deny any mismanagement and assert that except for the financial backing given it by Syms, Sr., during its days of adversity, the corporation would have long ago folded up or been forced through bankruptcy.

The cause came on for trial before the Court on March 21, 1946. At the beginning of the hearing certain preliminary matters were heard and disposed of (including the dismissal of Lee McRitchie as a party plaintiff) which have been made the subject matter of an order heretofore entered herein and in this Memorandum Opinion the Court will deal only with the question of the right of the plaintiffs to the appointment of a Receiver to take charge of and manage the affairs of the corporation, pending final disposition of this suit, to the dissolution of the corporation, the sale of its assets and distribution of the proceeds among the stockholders.

The Certificate of Incorporation of the Broward County Kennel Club, Inc., a Florida corporation, bears date of June 20, 1934. The first meeting of stockholders was held on December 17, 1934. William J. Syms, Sr., was the moving spirit in the organization of the corporation and subscribed to a majority of the shares of capital stock issued at the time of incorporation. He purchased 515 of the 961 shares originally issued. The remaining shares were divided among 9 other stockholders, in varying amounts, the largest holder owning 100 shares.

The corporation operates a dog track near Hollywood, Broward County, Florida. The first few years of operation were not profitable and the corporation accumulated a substantial deficit. During this period Syms acquired 60 additional shares of stock and one Joseph Stassi acquired the remaining shares of stock of all the other stockholders, save three. At a special meeting of Directors, on April 15, 1937, it was decided to cancel 300 shares of stock (par value of $30,000) in order to absorb $29,164.45 operating deficit, incurred for the first two years of operation, leaving 661 shares outstanding, of which Syms, Sr., owned 395 shares. Subsequently there were other changes in stockholders and today Florence Strong, Barbara Roberts and William J. Syms, Sr., are the only stockholders who subscribed to the original issue of stock. On November 2, 1939, Syms, Sr., transferred to his son, as a gift, 150 shares of his stock, and these shares, plus the shares retained by Syms, Sr., have remained a majority of the outstanding stock throughout the existence of the corporation to date of the trial of this case. Syms' son is a minor and Syms, Sr., exercised complete control of the 150 shares transferred to his son.

The capital stock of the corporation is now held as follows:

William J. Syms, Sr........225 1/2 shares.
William J. Syms, Jr.........150 shares
Lee McRitchie (the original third plaintiff now dismissed from these proceedings) ................ 172 shares
Florence Strong (Plaintiff) 69 shares
Barbar Roberts (Plaintiff) 24 2/3 shares
Mary A. Pettit............. 19 5/6 shares.

From this list of present stockholders it is apparent that all stockholders except one (Mary A. Pettit) are interested either on one side or the other in this litigation.

At the first meeting of the stockholders on December 17, 1934, all the stockholders of the corporation, in writing, including the remaining two plaintiffs here, adopted

by-laws, which included, inter alia, the following provisions:

"Article X, Section 1:—It is the intention of these by-laws to permit the unhampered operation and management of the corporation by the majority in interest of the stockholders."

"Article XI, Section 1:—Before there can be a valid sale or transfer of any of the stock of the corporation by any stockholders thereof the holder of the stock to be sold or transferred shall give notice in writing by registered mail to each stockholder of record of this corporation of his or her desire to sell or transfer the same and the price per share at which he or she offers the same for sale. If such stockholder has a bona fide offer for his stock he shall so state in such notice, together with the amount of such offer and the name and address of the person by whom such offer was made. If within ninety days after the mailing of such registered notices any stockholder shall agree to purchase the stock so offered or desired to be sold or transferred at the price so offered, then said stock must be sold or transferred to the stockholder or stockholders who desire to purchase the same. If none of the stockholders offer or agree to purchase said stock at the price offered within the said ninety day period, then said stockholder of said stock so desiring to sell the same may dispose of the same to any person or persons whom he may so desire, provided, however, he does not sell the stock to any other person or persons at a less price than that at which he had heretofore offered the same to the stockholder or stockholders. In the event that he should desire to sell the same at a less price than he first offered same to said stockholder or stockholders, before he can sell to any person or persons, not stockholders, he shall again give the same notice to each stockholder of record as heretofore required in the first instance. In the event the stockholder actually sells his stock to any other person or persons at a less price than that at which he had heretofore offered the same to the stockholders, of record, as hereinabove provided, then such purported sale or transfer of said stock at a less price shall be null and void and of no force and effect. The corporation shall have the right to require the stockholder so desiring to sell said stock and the transferee of said stock, in event said stock is not sold to a stockholder of record, to submit proof as to the amount received and paid for said stock. Should such proof show that said stock was sold at a fictitious price or at a price lower than said stock was offered to the stockholders of record, then said sale shall be null and void and of no force and effect."

These provisions in the by-laws have remained in effect since the first meeting of stockholders. At this meeting of stockholders a Board of Directors was elected, only one of whom (William J. Syms, Sr.) was a stockholder. There was not another meeting of stockholders until January 20, 1942, and since that date annual meetings of stockholders have been held each year. During the period between the original and second meeting of stockholders (1934 to 1942), the business of the corporation was carried on by its officers and directors without much apparent disagreement among the stockholders.

Bginning with the 1939–1940 Racing Season, the corporation began to make money and since that time, except for the 1944–1945 Season, when the dog track was closed by Government war restrictions, the business has been very profitable and in this period of time has earned and paid out in dividends to each stockholder, amounts substantially in excess of each stockholder's total capital investment. Syms, Sr., is the only stockholder receiving any compensation from the corporation, other than by way of dividends and prior to the institution of this suit he had declined to elect to any office in the corporation any other stockholder or to otherwise put any other stockholder on the payroll of the corporation. This situation is undoubtedly the genesis of this litigation.

The law is well settled that a stockholder, in taking stock in the ordinary corporation, submits, within the charter limits, to the control of the affairs of the corporation by the owners of a majority of the stock, through the directors whom the majority stockholders choose. The minority has the right to have the majority exercise such control honestly and not fraudulently, but have no right to have a Court substitute its own ideas and wishes for those of the majority. This legal principle has been pronounced by the Supreme Court of Florida and by the Circuit Court of Appeals of the Fifth Circuit.

410

In News-Journal Corporation et al. v. Gore, 147 Fla. 217, 2 So.2d 741, the Supreme Court of Florida held that misconduct in the operation of a corporation by majority stockholders did not warrant the sale of corporate property and liquidation of corporate assets or interference with corporate management, where the corporation was a going concern and was solvent and was capable of being made to carry out the corporate functions.

In Yates Ranch Oil & Royalties Co. et al. v. Jones, 100 F.2d 419, the Circuit Court of Appeals for the Fifth Circuit held that while minority stockholders are entitled to maintain an action against a corporation and its officers for an accounting of funds alleged to have been wrongfully diverted, the Court could not appoint a Receiver for a solvent corporation for the purpose of ousting the corporate officers or ending the corporate enterprise.

■ The law as announced in the foregoing cases is particularly applicable in this case, where plaintiffs agreed in the bylaws adopted at the first stockholders' meeting to permit the unhampered operation and management of the corporation by a majority in interest of stockholders and agreed further to place limitations on the right of a stockholder to sell his stock in the corporation to anyone other than stockholders of the corporation.

On the face of the complaint in this case there is enough to justify an inquiry into the management of the affairs of the corporation by William J. Syms, Sr., and his hand-picked officers, to determine if they have been guilty of mismanagement and what, if anything, they owe the corporation. Syms, Sr., has been in complete control, direction and management of the corporation since its organization, has elected his own board of directors and officers and has run the corporation pretty much to suit himself. This situation imposed upon him a high degree of responsibility and integrity in the management of the affairs of the corporation. Under no circumstances does he have the right to run the corporation for the personal gain of its officers or to enrich himself at the expense of minority stockholders.

The complaint does not allege and the evidence does not indicate such fraud or mismanagement as would justify the appointment of a Receiver to succeed Syms,

Sr., in the management of this corporation or an injunction against his continuing to function as manager of the corporation. The corporation is now concededly solvent and so is William J. Syms, Sr. I express no opinion as to whether the management has been honest or dishonest and leave the way clear for the plaintiffs to proceed with the accounting they seek and if mismanagement and misappropriation of funds is shown, the officers will be required to account to the corporation for such mismanagement and misappropriation of funds and such measures will be taken as are necessary to enforce honest future management of the corporation in the interest of all stockholders.

The Court will appoint a Special Master to take testimony regarding the management of the affairs of the Broward County Kennel Club, Inc., by defendant, William J. Syms, Sr., and other officers and directors of said corporation, from the date of its incorporation to the date of the institution of this suit, to determine if there has been any mismanagement of the affairs of said corporation by said officers, to determine what amount, if any, they may owe said corporation by reason of mismanagement, if such mismanagement is found to have taken place and to report to this Court his findings and recommendations in this case.